IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 23, 2004 Session

## WILBURN LEE BROWN, JR., v. STATE OF TENNESSEE, DEPARTMENT OF CHILDREN'S SERVICES

**Appeal from the Chancery Court for Cumberland County**
**No. 8976-8-03     Vernon Neal, Chancellor**

---

**No. E2004-01272-COA-R3-CV - FILED NOVEMBER 30, 2004**

---

This appeal involves allegations of sexual abuse brought against Wilburn Lee Brown, Jr., ("Petitioner") by his stepdaughter. After the allegations were investigated, DCS concluded there was substantial and material evidence to support the allegations and the report of abuse would be "validated" pursuant to Tenn. Comp. R. & Regs. 0250-7-9-.02. Because Petitioner was employed at a youth development center, he was notified that his employer would be informed that he was the indicated perpetrator in a "validated" report of child sexual abuse and that Petitioner was no longer allowed to have access to children. After exhausting his administrative appeals, Petitioner appealed to the Trial Court. The Trial Court concluded there was substantial and material evidence to support the allegations of abuse and affirmed. Petitioner appeals and we, likewise, affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the
Chancery Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., and SHARON G. LEE, JJ., joined.

Wilburn Lee Brown, Jr., *pro se* Appellant.

Paul G. Summers, Attorney General and Reporter, and Douglas Earl Dimond, Senior Counsel, Nashville, Tennessee, for the Appellee State of Tennessee, Department of Children's Services.

# OPINION

## Background

This appeal involves Chapter 0250-7-9 of the Rules of the Tennessee Department of Children's Services titled "Due Process Procedures for Release of Child Abuse Records." The scope of these Rules is set forth in Tenn. Comp. R. & Regs. 0250-7-9-.01 and is as follows:

> The rules in this chapter apply to individuals whom the Department of Children's Services identifies or proposes to identify as a perpetrator of physical, severe, or sexual abuse, as defined in Parts 1, 4, or 6 of Chapter I of Title 37 of the Tennessee Code Annotated. These rules shall further apply only when such identification is released or proposed to be released to: (1) the individual's employer whether the individual is a paid employee or under contract; (2) the licensing authority of the employer or the individual; or (3) any other organization with which the individual is associated as a paid employee or contractor, or volunteer; whether such individual is providing instruction, care, supervision, or treatment (a) in a child welfare agency as defined in T.C.A. § 71-3-501 *et seq.*; (b) in a public or private school for children; (c) in a residential or institutional child caring organization; (d) through self employment; or (e) in any other organization. Such release shall be for the purposes of protecting children from further abuse and for the purposes directly connected with the administration of T.C.A. §§ 37-1-101 *et seq.*; 37-1-401 *et seq.*; 37-1-601 *et seq.*; 71-3-530.

The next section, 0250-7-9-.02, involves the process for classifying certain reports of child abuse as "validated." This section provides that a report of child abuse may be classified as "validated" if there is substantial and material evidence to indicate that the perpetrator committed physical, severe or child sexual abuse as defined in Tenn. Code Ann. §§ 37-1-102 or 37-1-602. The Regulations then set forth five factors which DCS deems will constitute substantial and material evidence and another three factors which are to be considered only as corroborative evidence. Specifically, the Regulations provide that any one of the following five factors "shall" constitute substantial and material evidence that the abuse has occurred:

(1) Medical and/or psychological information from a licensed physician, medical center, or other treatment professional, that substantiates that child abuse occurred.

(2) An admission by the perpetrator,

(3)     The statement of a credible witness or witnesses to the abusive act.

(4)     The child victim's statement that the abuse occurred. The following elements are typical of sexually abusive situations, and should be considered in assessing the weight to be given to the child's statement in cases where sexual abuse is alleged:

  (a)     History of Relationship.

      1.      Multiple incidents occurring over a period of time. This situation is most common where the alleged perpetrator is a relative, friend, or caretaker of a victim.

      2.      Progression of physical touching, from activities that appear acceptable at first, but become sexual in nature.

  (b)     Details of Abuse.

      1.      Explicit knowledge of sexual activity. The victim relates explicit details of the sexual experience. This is especially relevant where the details are beyond the knowledge typical of a child of the victim's age.

      2.      Richness of details, such as a location and/or time, even if a specific date is not given, or other details of the environment. For a preschool age child, such detail is not expected. As a child's developmental age increases, more detail is expected.

      3.      Consistency. If the child is interviewed more than once, the responses and statements are generally consistent from one interview to the next. Parts of the story are corroborated by other circumstances and/or witnesses.

(c)     Secrecy. The child indicates that he/she was instructed, asked, and/or threatened to keep the abuse secret.

(d)     Coercion. Elements of coercion, persuasion, or threats to get the child to engage in the activity.

(5)     Physiological indicators or signs of abuse, including, but not limited to, cuts, bruises, burns, or broken bones.

Tenn. Comp. R. & Regs. 0250-7-9-.02(1) - (5).

When a report of child abuse is "validated" and the alleged perpetrator is employed in one of the categories listed in the section titled Scope of Rules, *supra*, then the alleged perpetrator is provided notice that his or her employer will be notified that they are a perpetrator in a validated report of physical, severe, or sexual child abuse. The Regulations also provide certain appeal rights to the alleged perpetrator.

In 2002, Petitioner's stepdaughter alleged Petitioner had sexually abused her on four occasions over a two year period. According to Petitioner's stepdaughter's allegations, these four occasions involved Petitioner twice rubbing the outside of his stepdaughter's panties, on one occasion rubbing her buttocks, and on another fondling one of her breasts. Petitioner steadfastly has denied ever sexually abusing his stepdaughter. We will summarized briefly some of the proof regarding whether the alleged abuse actually occurred.

After the allegations were made, a DCS investigator interviewed the stepdaughter (hereafter referred to by her initials, "N.O."), who described each of these four incidents as well as where she and Petitioner were living at the time each abusive act allegedly happened. DCS also interviewed N.O.'s mother, who is Petitioner's wife, and she stated that N.O. earlier had disclosed two of the alleged incidents to her. However, N.O.'s mother did not believe N.O. and attributed the allegations to tension between her, N.O., and Petitioner. Petitioner's brother-in-law stated that, to his knowledge, the relationship between N.O. and Petitioner appeared to be a normal stepparent/stepchild relationship. He went on to add that shortly after N.O. initially made the allegations, he saw her in church and she insisted that the allegations were true.

As a result of the claimed sexual abuse, N.O. was removed from the home and placed in foster care. While in foster care, N.O. informed her foster care mother that Petitioner had abused her sexually, but N.O. gave no details about the abuse. The foster care mother later overheard a telephone conversation between N.O. and her mother. At the beginning of this conversation, N.O. told her mother that the abuse did not happen and she was "going to tell them that it did not happen." According to the foster care mother, N.O.'s mother "did not lead her into that she did it all on her own."

N.O. recanted the allegations of sexual abuse. According to N.O., she and Petitioner are "best friends" and go fishing, watch wrestling, cook together, etc. N.O. now claims that Petitioner never sexually abused her and she lied about the allegations because she was afraid Petitioner would take her mother's affections away from her. N.O. stated she got the idea of making allegations of sexual abuse from a friend and because she had been sexually abused in the past by a stepuncle and one of her mother's previous husbands. N.O. stated that this earlier abuse got her mother's attention. N.O. claimed that she was mad at Petitioner when she made the false allegations because he would not let her boyfriend and another friend into the house while her mother was not present. N.O. stated she decided to tell the truth after attending a church service where the topic of the sermon was lying.

Debbie Ward, a DCS Team Leader, testified that there are five factors to look at when validating a child's statement regarding abuse. These factors are consistency, opportunity for the abuse to have occurred, medical evidence, progression of incidents, and secrecy. According to Ward, N.O.'s statements of abuse met four of these five criteria. Ward further testified that she believed N.O. recanted because N.O.'s mother may have to move out of Tennessee if Petitioner loses his job because of N.O.'s allegations of sexual abuse.

Separate and apart from the present litigation, on August 28, 2002, a dependency and neglect hearing was conducted in the Cumberland County Juvenile Court. After a trial, the Juvenile Court entered an Order on October 2, 2002, which provides, *inter alia*, as follows:

> All parties and the minor child were present and represented by counsel, the Court having taken testimony, having admitted exhibits and having heard the argument of counsel, the Court holding that the State failed to meets (sic) its burden of proof regarding the specific allegations of sexual assault by [Petitioner], the Court further holding that [N.O.'s mother] was unaware of her daughter's drug and alcohol use, sexual activity and other conduct inappropriate for [N.O.'s] age, and holding that [N.O.'s mother] failed to properly supervise her daughter's conduct and her education, the Court [declares N.O.] dependent and neglected due to these facts.[1]

Notwithstanding these conclusions by the Juvenile Court, DCS nonetheless determined, based on N.O.'s allegations and the subsequent investigation and in reliance on Tenn. Comp. R. & Regs. 0250-7-9-.01 *et seq.*, that Petitioner was the indicated perpetrator in a "validated" case of child sexual abuse. Because Petitioner was employed at the Taft Youth Development Center,

---

[1] The Order entered in the Juvenile Court apparently was made an exhibit during the course of the present litigation, but for some unknown reason was not included in the record on appeal. Petitioner, who is proceeding *pro se*, attached a copy of the Order to his brief on appeal. We discuss the contents of the Order solely because the Juvenile Court's ultimate conclusion that the State failed to prove sexual abuse was discussed by the Trial Court in its decision in this litigation. Furthermore, while we assume DCS disagrees with the Juvenile Court's conclusion, DCS does not contend the Juvenile Court's holding was anything other than as set forth above.

he was notified that his employer would be informed that he was the perpetrator in a validated claim of child sexual abuse and that he no longer would be permitted to have any access to children.

Petitioner timely availed himself of the appeal procedures contained in the Regulations, eventually resulting in a hearing before an Administrative Law Judge ("ALJ") on April 8, 2003. At this hearing, the ALJ heard testimony from the various witnesses as discussed above and thereafter issued an order affirming DCS'c classification of Petitioner as "the indicated perpetrator in a validated case of child abuse involving N.O." In reaching this conclusion, the ALJ stated that "Rule 0250-7-9-.02 requires proof of only one of the eight Validation Factors linking the alleged perpetrator to the abusive act in order to constitute the necessary substantial and material evidence that the abuse occurred." Initially, we point out that this is incorrect. The Regulations do set forth eight validation factors, but specifically provide that only the first five "shall" be considered substantial and material evidence, with the other three being only corroborative evidence. In any event, the ALJ discussed the testimony and the fact that N.O. described to the DCS investigator the details of each of the four events and an outline of the progression of physical activity which eventually resulted in the fondling of N.O.'s buttocks and breast. Although N.O. could not give exact dates on which the alleged events occurred, she was able to state where she and Petitioner were living when each incident allegedly took place. The ALJ also concluded that N.O.'s statements that the abuse occurred remained consistent from her initial disclosure to her mother, to the statements made to the police and DCS, and finally to the statements made to her uncle and foster mother, all of which were made before N.O. recanted her allegations. The ALJ concluded that validation factor number 4 had been met, and that this constituted substantial and material evidence sufficient to affirm the classification of Petitioner as the indicated perpetrator in a validated report of child sexual abuse.

Petitioner appealed the decision of the ALJ to the Cumberland County Chancery Court (the "Trial Court"). Petitioner filed a motion asking the Trial Court for leave to present additional evidence. This additional evidence was the affidavit of C.C., who was N.O.'s boyfriend at the time the allegations were made. According to C.C., he and N.O. would sneak into her mother's and Petitioner's house when they were at work and have sex. Petitioner suffered a work related injury requiring him to miss work and stay home, thereby preventing C.C. and N.O. from having sex in the house. C.C. stated that one of N.O.'s friends told N.O. that if she wanted to move out of the house, she would have to say that Petitioner was sexually molesting her. Not long after that, N.O. ran away from home and went to C.C.'s house. C.C.'s parents took N.O. home, but N.O.'s mother already had filed a missing person's report so they proceeded to the Justice Center. At the Justice Center, N.O.'s friend told her that she had better file molestation charges against Petitioner or the police would lock her up for running away. N.O. then made the allegations of sexual abuse. The Trial Court denied Petitioner's motion for leave to present this additional evidence because it was "not material," it was cumulative because N.O. already had attempted to recant her allegations of abuse, and Petitioner had not shown why this evidence was not presented at the hearing before the ALJ.

The Trial Court eventually entered an Order upholding the decision of the ALJ. The Trial Court observed that "[t]he proof necessary to show substantial and material evidence is 'less than the preponderance of the evidence [but] more than a scintilla or glimmer.' *Wayne County vs. Tennessee Solid Waste Disposal Control Board*, 756 S.W.2d 274 (Tenn. Ct. App. 1988)." The Trial Court then reviewed in detail the evidence presented at the administrative hearing and concluded there was substantial and material evidence to support the decision upholding Petitioner's classification as an indicated perpetrator of child sexual abuse. The Trial Court went on to add that the Juvenile Court's finding that the State had failed to meet its burden of proof regarding the specific allegations of sexual abuse did not estop DCS from classifying Petitioner as an indicated perpetrator in a validated claim of child sexual abuse. According to the Trial Court:

> The burden of proof placed on the State in a dependency and neglect case before the juvenile court is clear and convincing evidence.… Because of the different burdens of proof and the different nature of the two proceedings, the juvenile court's findings are not binding upon the administrative agency or this reviewing court. By analogy, an acquittal in a criminal case would not even be admissible in a civil case, because of the difference in the burden of proof. The parties to the civil proceeding are entitled to have the issue decided upon the preponderance of the evidence. *Wheat v. Continental Casualty Company*, 652 S.W.2d 345 (Tenn. 1983).

Petitioner filed a *pro se* appeal to this Court. While Petitioner makes several arguments, each one centers around his claim that the proof established he did not commit the alleged sexual abuse and his classification as the indicated perpetrator in a validated claim of sexual abuse was, therefore, in error.[2]

## Discussion

Tenn. Code Ann. § 4-5-322(h) addresses the narrow scope of judicial review of an administrative agency decision as follows:

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> > (1) In violation of constitutional or statutory provisions;
> >
> > (2) In excess of the statutory authority of the agency;

---

[2] Immediately prior to oral argument on this appeal, Petitioner made a motion requesting this Court allow N.O. to present his argument. Because N.O. was not a party or a licensed attorney, we denied that request.

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5) Unsupported by evidence which is both substantial and material in the light of the entire record.

In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

The term "substantial and material evidence" has been defined as "'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.'" *Papachristou v. Univ. of Tennessee*, 29 S.W.3d 487, 490 (Tenn. Ct. App. 2000) (quoting *Clay Co. Manor, Inc. v. State*, 849 S.W.2d 755, 759 (Tenn. 1993)). As noted by the Trial Court, this Court also has described it as requiring "something less than a preponderance of the evidence . . . but more than a scintilla or glimmer." *Gluck v. Civil Serv. Comm'n*, 15 S.W.3d 486, 490 (Tenn. Ct. App. 1999) (quoting *Wayne Co. v. Tennessee Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988)).

When reviewing a trial court's review of an administrative agency's decision, this Court essentially is to determine "whether or not the trial court properly applied the . . . standard of review" found at Tenn. Code Ann. § 4-5-322(h). *Papachristou v. Univ. of Tennessee*, 29 S.W.3d at 490. This Court addressed its judicial review of evidence contained in the administrative record as follows:

While this Court may consider evidence in the record that detracts from its weight, [this] [C]ourt is not allowed to substitute its judgment for that of the agency concerning the weight of the evidence. . . .

*Jones v. Bureau of TennCare*, 94 S.W.3d 495, 501 (Tenn. Ct. App. 2002)(quoting *Gluck v. Civil Serv. Comm'n*, 15 S.W.3d at 490 (citations omitted)). *See also McClellan v. Board of Regents of State Univ.*, 921 S.W.2d 684, 693 (Tenn. 1996) (holding that this Court "is not at liberty to reevaluate the evidence or substitute our judgment for that of the factfinder").

In light of our very limited standard of review, the issue before this Court, as was it before the Trial Court, is not whether Petitioner sexually abused N.O., but only whether there is substantial and material evidence to support the decision reached by the ALJ. The facts set forth above lead this Court to the inevitable conclusion that there was. When a report of abuse is made, DCS is in the unenviable position of trying to determine whether the report is valid or unfounded.

DCS certainly is in a position to establish factors to be considered when making this determination. The factors listed in the Regulations unquestionably are relevant in making this determination. However, we are troubled by the Regulations insofar as DCS has taken it upon itself to insist that proof of any one of the five factors set forth previously "shall" constitute substantial and material evidence. It seems to this Court that what constitutes evidence sufficient to be "substantial and material" is a matter best to be decided initially by the factfinder based on whatever relevant and admissible evidence is presented in that particular case, not DCS Regulations.[3] Nevertheless, even if we consider the various factors as nothing more than factors to be considered in determining whether substantial and material evidence was presented, we still conclude that such evidence was presented in this case as already discussed, and this is so even given N.O.'s recanting of her allegations.

In short, Petitioner has been branded as a pedophile by DCS. After the ALJ issued its ruling, DCS sent a letter to Petitioner's employer stating:

> In accordance with a Final Order issued by [the ALJ] … the Department is notifying you that the report that named [Petitioner] as the perpetrator of child sexual abuse was properly classified as indicated. The indicated classification, which represents the final classification decision of the Department, will require you to continue to assure [Petitioner] non-access to children served by your facility, as provided in State Rule 1240-7-.09(5)(a).…

As already noted, Petitioner works at the Taft Youth Development Center. The consequences to Petitioner's job as well as his chosen occupation undoubtedly will be enormous.

The Trial Court held that the decision of the Juvenile Court was not binding in the present litigation because of the differing burdens of proof. Although we agree with this conclusion, we believe it merits further examination by way of a hypothetical example. Let's assume, for present purposes only, that John Doe's minor stepdaughter claims he sexually molested her and criminal charges are pursued by the local district attorney. At the criminal trial, the stepdaughter testifies in detail about the molestation, and her statements about the abuse have been consistent throughout the entire process. John Doe, however, adamantly denies engaging in any improper behavior. After a lengthy and hard-fought trial, the jury concludes the State failed to prove its case beyond a reasonable doubt and John Doe is acquitted. Because of the differing burdens of proof, the criminal acquittal would not be binding on a juvenile court dependency and neglect hearing since it utilizes the lower clear and convincing burden of proof. Undaunted by the result in the criminal trial, DCS claims in a juvenile court proceeding that the stepdaughter is dependent and neglected because she was sexually

---

[3] No one would seriously argue that DCS has the power to declare that certain evidence "shall" constitute proof beyond a reasonable doubt or "shall" constitute proof by clear and convincing evidence or even "shall" constitute proof by a preponderance of the evidence. We see no difference between these scenarios and the language of the DCS Regulations since ultimately the primary issue is whether substantial and material evidence exists.

molested. After another trial, the juvenile court judge concludes that the State failed to prove the allegations of sexual abuse by clear and convincing evidence.[4] While John Doe certainly is pleased with the outcomes of the two trials, he nevertheless is served with a summons and complaint in a civil lawsuit brought by his stepdaughter seeking compensatory damages arising from the alleged sexual assault. Because a civil lawsuit of this nature would require the stepdaughter to prove her case by the lower preponderance of the evidence standard, both the criminal acquittal and the holding of the juvenile court would not bar the civil lawsuit. A third trial now takes place, and the civil jury concludes that the stepdaughter failed to prove her case by a preponderance of the evidence and renders a verdict in favor of John Doe.

Even after the results in the three trials, DCS in good faith remains convinced that John Doe molested his stepdaughter. Although he believes his legal woes have ended having successfully defended three trials, John Doe receives a notice from DCS stating he has been indicated as the perpetrator in a validated claim of child sexual abuse. John Doe files an administrative appeal, and after a fourth trial, the ALJ concludes the previous three trials have no estoppel effect because of the differing burdens of proof. The ALJ further concludes that because the stepdaughter has been consistent from the very beginning regarding the details of the alleged sexual abuse, there is substantial and material evidence that the sexual abuse occurred pursuant validation factor number 4, Tenn. Comp. Rules & Regs 0250-7-9-.02(4). John Doe's employer is notified that he is an indicated perpetrator in a validated claim of sexual abuse and that he can no longer have access to children. John Doe's employment then is terminated.

The point of the foregoing hypothetical situation is to show why this Court has very serious concerns about the constitutionality of the DCS Regulations which permit an individual to be indicated as the perpetrator in a validated claim of child sexual abuse, along with the attendant consequences of that classification, based solely upon a showing of only substantial and material evidence. We express our concerns even being fully aware of the legitimate and necessary goal of the DCS Regulations which is to protect helpless children from such abuse. Substantial and material evidence is a very low threshold and can be achieved merely with evidence which is considered to be only just more than a scintilla or glimmer as defined in applicable case law. Our concern about the use of the substantial and material standard centers around that standard being the one used when making the initial determination. We have no such concerns about that standard being the one used on appellate review.

We express no opinion whatsoever on whether Petitioner committed the alleged sexual abuse. Indeed, there never has been any finding that Petitioner actually committed the alleged acts; and there still is no such finding. In fact, an ALJ in this type of proceedings could find that the preponderance of the evidence weighs *against* a conclusion that any abuse occurred, but at the same time conclude substantial and material evidence is present. Simply because DCS, the ALJ, or even this Court finds that substantial and material evidence exists, this in no way is a determination that

---

[4] As noted previously, this is exactly what the Juvenile Court held in the present case.

any abuse actually was committed.[5] In the present case, the only tribunal which actually addressed whether Petitioner committed the alleged acts was the Juvenile Court, which held that the State failed to prove its case by clear and convincing evidence.

Because of the applicable standard of review and given the sole issue raised on appeal by Petitioner, once the Trial Court and this Court concluded there was substantial and material evidence, Petitioner's appeal essentially was over. Neither this Court nor the Trial Court is permitted to undertake an examination of where the preponderance of the evidence lies or whether the evidence is clear and convincing, etc. Because the Trial Court was prohibited from weighing or reevaluating the evidence, the Trial Court's stating that C.C.'s affidavit was "not material" is understandable, and we find no error by the Trial Court in that ruling.

Petitioner has not challenged the constitutionality of the DCS Regulations in this appeal. We are aware that it is unusual for this Court to go to such length to discuss an issue that is not properly raised on appeal. Nevertheless, given our concerns over the validity of the DCS Regulations, we felt compelled to do so. However, because we conclude there was substantial and material evidence to support the decision of the ALJ, and as that is the only issue properly raised on appeal, we reluctantly affirm the decision of the Trial Court.

## Conclusion

The Judgment of the Trial Court is affirmed and this cause is remanded to the Trial Court for collection of the costs below. Costs on appeal are assessed against the Appellant, Wilburn Lee Brown, Jr., and his surety, if any.

_____
D. MICHAEL SWINEY, JUDGE

---

[5] Tenn. Comp. R. & Regs. 0250-7-9-.08[(2)] provides that when a hearing is timely requested, the "sole issue for the hearing officer to determine is whether the standards for classifying the report as 'validated' … have been met." In other words, according to the plain language of the Regulations, the issue at the hearing never is whether any abuse actually took place, but only whether there is substantial and material evidence (i.e., more than a scintilla or glimmer) to support the allegations.