# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

**FILED**

**February 29, 2000**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

MARK ANDREW PAPACHRISTOU,    )
    )
    Petitioner/Appellee,    )
    )   Appeal No.
    )   M1999-00960-COA-R3-CV
VS.    )
    )   Davidson Chancery
    )   No. 98-3187-I
THE UNIVERSITY OF  TENNESSEE,    )
    )
    Respondent/Appellant.    )

APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR

JOHN E. ELDRIDGE
606 W. Main Street, Suite 350
P. O. Box 84
Knoxville, Tennessee 37901-0084
    Attorney for Petitioner/Appellee

BEAUCHAMP E. BROGAN
General Counsel
The University of Tennessee

RONALD C. LEADBETTER
Associate General Counsel
719 Andy Holt Tower
Knoxville, Tennessee 37996-0170
    Attorney for Respondent/Appellant

REVERSED AND REMANDED

BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:
KOCH, J.
COTTRELL, J.

## O P I N I O N

The Chancellor of the University of Tennessee suspended the appellee indefinitely for violating the College of Law honor code.  The Chancery Court

of Davidson County reversed the suspension because of insufficient material evidence. For the reasons stated below, we reverse the trial court's ruling.

## I.

In the fall of 1997, the appellee was a first year law student at the University of Tennessee College of Law. In December of 1997, the appellee attended his first law school exam. A cover sheet included the instructions for the exam and a brief statement referencing the University's honor code. While Professor Kennedy was going over the instructions for the exam, but before the professor gave the class permission to begin, the appellee opened his booklet and began reading the exam. According to the appellee, after realizing that other classmates still had their exams closed, he closed his booklet also. While going over the instructions, the professor stated that the exam was three hours long and wrote "END 4:30" on the board at the front of the classroom. The classroom was equipped with a clock on the back wall. At approximately 1:20 p.m. the students were given permission to begin. Although the professor did not stay in the room during the exam, she wrote her office phone number on the board in the event a student needed to reach her.

During the exam, another student, Robin Flores, had a problem with his glasses. Mr. Flores called the professor to discuss the problem and she obtained a glasses repair kit from another professor. After an employee of the Student Records Office helped Mr. Flores repair his glasses, the professor allowed Mr. Flores an extra fifteen minutes to finish his exam. Although the proctor was made aware of the extra time allotted to Mr. Flores, there was no general announcement made to the rest of the class.

At 4:30 p.m. the proctor called time. Although witnesses differed in their accounts of the proctor's exact words, the proctor testified that she said something to the effect of "it's time to quit." In any event, after the proctor's

statement, the majority of the students remaining in the classroom began to form a line to turn in their exams or sat in their seats waiting for the line to shorten. However, several students, including the appellee, continued to work on their exams. A group formed outside the classroom, and several students in the group noticed that there were students continuing to write. Approximately ten to fifteen minutes after the proctor called "time," one of the students standing in the hallway, Molly Hudgens, went back in the classroom and asked the proctor if this was not a timed exam. Although directed at the proctor, Ms. Hudgens' statement was loud enough for everyone in the room to hear. The proctor responded that she had called time but some students still did not turn in their papers. Ms. Hudgens stated that this was not fair and left the room.

At this point, several of the students who had continued to work after the proctor called time, gathered their belongings, turned in their exams, and left the room. All of the evidence, other than the appellee's own testimony, indicates that the appellee continued to work after Ms. Hudgens' and the proctor's comments. In addition, when Ms. Hudgens made her comments, the appellee simply shrugged his shoulders and resumed work on his exam.

After Ms. Hudgens left the room, Mr. Flores asked the proctor how much time he had left. The proctor responded that he had five minutes. According to Mr. Flores, at this point the appellee stated that if Mr. Flores had time remaining, then the appellee also had time remaining. The proctor and Mr. Flores explained to the appellee that Mr. Flores was given extra time within which to complete his exam. According to the appellee, he then immediately turned in his exam and returned to his seat to wait for another student, Katrina Shepherd, who was still working. However, Ms. Shepherd testified that she did not remember seeing the appellee after the exam and that the appellee did not wait for her while she finished. In addition, according to the testimony of other witnesses, the appellee was the last student, other than Mr. Flores, to continue working. It is undisputed that Mr. Flores was the last student to finish his work. However, Mr. Flores

testified that the appellee turned in his exam only moments before Mr. Flores turned in his exam at 4:45 p.m. According to the proctor, Justin Martin, not the appellee, was the next to last student to turn in his exam. However, Mr. Martin and Christie Kiser, a student standing outside the classroom, both testified that when Mr. Martin left the room, the appellee was still there.

After several student complaints, the law school investigated the allegations of student misconduct and the appellee was charged with violating the honor code. Such charges stated:

> Violation of Rule 1720-4-9-.04 (College of Law Honor Code - with respect to an examination, intentionally engages or attempts to engage in any other form of cheating, i.e., conduct specifically intended to secure an unfair advantage or to subject another to an unfair disadvantage.)
>
> Specifically, it is alleged that:
>
> During the Fall Semester of 1997, in taking the final examination in Civil Procedure I, Mr. Papachristou commenced work on the examination before the examination commenced and continued work on the examination after time had expired, with the intent to disregard the time constraints of the examination and thereby secure an unfair advantage over students who had not violated the examination's time constraints.

After a hearing, the hearing officer entered an initial order dismissing the charges against the appellee. The Chancellor of the University, however, reversed the hearing officer and found the appellee guilty of the charges. The Chancellor made the following findings of fact:

> 1. Mr. Papachristou was familiar with the College of Law Honor Code and understood that any act(s) resulting in an unfair advantage to him in taking an examination would be an act of cheating under the College of Law Honor Code.
>
> 2. The class was told not to turn over the exam until instructed to do so by the examination proctor. Mr. Papachristou knowingly disobeyed these instructions by the proctor and, prior to receiving approval to begin the examination, turned over his test papers and began looking through the pages.

3. The class was instructed that the examination would end at 4:30 p.m., and the ending time of 4:30 p.m. was written on the board in large numerals. The proctor called time at 4:30 p.m., and Mr. Papachristou continued to work an additional ten minutes or longer after time was called, knowing that time had been called.

On appeal to the Chancery Court for Davidson County, the trial court found that the Chancellor's findings were not supported by substantial and material evidence. Therefore, the trial court reversed the University Chancellor's order. The University now appeals from the trial court's decision.

## II.

Tenn. Code Ann. § 4-5-322(h) states that upon judicial review of an agency's findings

(h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(5) Unsupported by evidence which is both substantial and material in the light of the entire record.

In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

"Substantial and material evidence" has been defined as "'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.'" *Clay County Manor, Inc. v. State of Tennessee*, 849 S.W.2d 755, 759 (Tenn.

1993) *(quoting Southern Railway Co. v. State Board of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984)).

This Court's review of the trial court's decision is essentially a determination of whether or not the trial court properly applied the foregoing standard of review. *James R. Bryant v. Tennessee State Board of Accountancy*, No. 01A01-9303-CH-00088, Davidson County (Tenn. Ct. App. filed September 1, 1993 at Nashville) *(citing Metropolitan Gov't. of Nashville v. Shacklett*, 554 S.W.2d 601, 604 (Tenn. 1977)).

The appellant first contends that the trial court erred in finding that the University Chancellor's findings were not supported by substantial and material evidence. In light of the applicable law and the facts set out in the record, we agree with the appellant. There was substantial and material evidence from which the University Chancellor could find that the appellee violated the honor code.

The testimony in this record is in conflict. Therefore, what really happened in that classroom and what motivated Mr. Papachristou to do what he did requires the fact finder to assess the credibility of the many witnesses. Mr. Papachristou's credibility may have been seriously affected by his denial of ever hearing anyone say that time had been called. It is clear, however, that he knew time was a problem, because he said to Mr. Flores, in effect, "If you have more time, then so do I."

When reviewing administrative decisions, the courts do not make de novo decisions about the credibility of witnesses. *Crass v. Tennessee Valley Authority*, 460 F. Supp. 941 (D.C. Tenn. 1978), *aff'd* 627 F.2d 1089 (6th Cir. 1978). Neither the trial court nor this court may review issues of fact de novo or substitute the court's judgment for that of the agency as to the weight of the evidence. *Reece v. Tennessee Civil Service Commission*, 699 S.W.2 808 (Tenn.

Ct. App. 1985). With substantial and material proof in the record on which the University Chancellor's findings could be based, the action taken must be affirmed.

The appellee argues that the University's decision to prosecute the appellee but not to prosecute the other students who exceeded the time limit of the exam was arbitrary and capricious and represented an unwarranted exercise of discretion in light of the evidence. However, for the same reasons concerning the credibility of the witnesses and the conflicts in the testimony, we are unable to conclude that the University's actions were arbitrary or capricious or that they constituted an unwarranted exercise of discretion.

We reverse the decision of the trial court and the cause is remanded to the Chancery Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellee, Mark Andrew Papachristou.

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M.S.

CONCUR:


_____
WILLIAM C. KOCH, JR., JUDGE


_____
PATRICIA J. COTTRELL, JUDGE