IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 7, 2001 Session


## JOHN T. KING v. ANNE B. POPE, Commissioner of the Tennessee Department of Commerce and Insurance

Direct Appeal from the Chancery Court Part III, for Davidson County
No. 99-3550-III    Hon. Ellen Hobbs Lyle, Chancellor

No. M2000-02127-COA-R3-CV - Filed October 10, 2001


The Commissioner revoked Petitioner's security license upon finding Petitioner had sold unregistered securities. The Chancellor reviewed the action and affirmed. On appeal, we reverse and dismiss the action for revocation.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Reversed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and CHARLES D. SUSANO, JR., J., joined.


R. Louis Crossley, Jr., Knoxville, Tennessee, and W. Davidson Broemel, Nashville, Tennessee, for Appellant, John T. King.

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General, and Janet M. Kleinfelter, Senior Counsel, Nashville, Tennessee, for Appellee, Anne B. Pope.


## OPINION

This action commenced when the Department of Commerce and Insurance filed a complaint seeking to revoke John D. King's registration as an agent, alleging that he was selling unregistered securities through a sale/leaseback program offered by his company. Capital Investments, Inc., King's company, began selling a pay telephone sale/leaseback program for Quarter Call, Inc., ("QCI") in February of 1994. This plan sold pay telephones from QCI to consumers for $4,995.00 each, and then the consumers leased the phones back to QCI for lease payments of $75.00 per month, for a term of sixty months. The consumers received the fixed lease payment and did not receive any fluctuation of payments depending on the revenues generated by the phone. The

consumer also entered into an Option to Sell Agreement, whereby the consumer could resell the telephones to QCI at any time upon a specified notice. QCI's obligations were guaranteed by a performance bond with American Diversified Insurance Company, and at the end of the lease, QCI was obligated to repurchase the phone from the customer.

In the administrative proceeding, the parties agreed to stipulate the facts and exhibits and the issue of whether the program was a security was submitted to an Administrative Law Judge. The ALJ issued an Order finding that this program was a security, and King appealed to the Commissioner who affirmed the ALJ's Order. This action was then filed in Chancery Court seeking review.

The Chancellor affirmed the ALJ's ruling, finding that the ALJ applied the proper test in finding an investment contract, and that the requirements of the test were met with the sale/leaseback program. This ruling is now appealed to this Court.

The sole issue on appeal is whether the sale/leaseback program constitutes a security under Tennessee law?

The Chancellor's review, as well as this Court's of the ALJ's ruling is pursuant to the standard set forth in Tenn. Code Ann. §4-5-322 (h), which states:

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion;  or
>
> (5) Unsupported by evidence which is both substantial and material in the light of the entire record.
>
> In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Our review of the Trial Court's decision is essentially to determine whether or not the Trial court properly applied the foregoing standard of review. *Papachristou v. University of Tennessee*, 29 S.W.3d 487, 490 (Tenn. Ct. App. 2000). Further, "substantial and material evidence" has been defined as "such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *Id.*

Tenn. Code Ann. §48-1-102 defines security as:

"Security" means any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, pre-organization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, certificate of interest or participation in an oil, gas, or mining title or lease or in payments out of production under such a title or lease; or, in general, any interest or instrument commonly known as a "security," or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing. . . .

The Commissioner insists that the transaction was an "investment contract" within the meaning of the definition of "security" set forth in the Statute. As the Administrative Law Judge observed:

This statute is remarkably similar to the Federal statute, which was used as a basis for the State statute. It defines a security as: "any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, pre-organization certificate, or subscription, transferable share, investment contract, . . .

The ALJ based his decision finding that this sale/leaseback program constituted an investment contract and therefore a security under Tennessee law on the Tennessee Court of Criminal Appeals' decision in the case of *State v. Brewer*, 932 S.W.2d 1 (Tenn. Crim. App. 1996). The *Brewer* Court applied the so-called "Howey-Risk Test," and followed the decision in *State v. Hawaii Market Center, Inc.,* 52 Haw. 642, 485 P.2d 105 (Haw. 1971). However, the Sixth Circuit, in 1997, in *Cooper v. King*, 114 F.3d 1186, 1997 WL 243424 (6th Cir. Tenn.), which involved the sale of telephones by Capital Investments to the Coopers in the same manner and terms as King marketed the phones for QCI, said:

The Coopers claim that the District Court erred in finding that the QCI sale and leaseback program was not a security. A security includes an instrument or interest (1) commonly known as a stock, (2) an investment as specified in the Security Act and Security Exchange Act, and (3) some investment contracts or certificates of interest or participation. 15 U.S.C. §§77b(1); 78c(a)(10). An investment contract is a security if it satisfies a four part test: (1) an investment of money; (2) in a common

enterprise; (3) with the expectation of profits; (4) derived solely from the efforts of others. *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946). The substance of the transaction, i.e., "the economic realities," rather than is form, determine whether a financial arrangement is a security. *United Housing Fund v. Forman,* 421 U.S. 837, 851-52 (1975).

The Court applied what is commonly known as a Howey-Forman test, which is the majority rule in the Federal courts. *Id.* In order to satisfy all the elements of a security under the statute, the Court said horizontal commonalities are required, i.e., the sharing or pooling of funds in which the fortunes of individual investors are inextricably intertwined by contractual and financial arrangements. Citing *Union Planters National Bank v. Commercial Credit Business Loans, Inc.*, 651 F.2d 1174 (6th Cir. 1981) The Court then said:

> Here, Plaintiffs have not demonstrated that the purchase of their phones was "inextricably intertwined" by contractual or financial arrangements to that of any other investors. Plaintiffs did not acquire or own the phones in common with other investors. Nor did they have an interest in the profit generated from all of the installed phones. Rather, the purchasers simply received a fixed monthly rental fee of $75. Further, each owner, including Plaintiffs, had a separate purchase agreement that individually entitled them to their own phones and to resell them to QCI. The mere fact that funds of investors, such as Plaintiffs, were co-mingled in a single bank account does not render this transaction a security.

King also argues that either under the Howey-Forman test or the Howey Risk Capital test the transactions in this case were not securities. We do not reach the analysis employed by *Brewer*, because we believe the better reasoned and proper test is the Howey-Forman test, as applied by the 6th Circuit in the *Cooper* case. When that test is applied to the transactions before us, as found by the 6th Circuit, we hold the transactions at issue are not securities within the meaning of the Tennessee Act.

The ALJ and the Chancellor did not inappropriately look to the *Brewer* case for guidance. However, we decline to follow its analysis and adopt the Howey-Forman test which results in the reversal of the Chancellor and the Commissioner's findings.

Accordingly, the decision of the Trial Court is reversed, the action dismissed and the cause is remanded to the Commissioner to dismiss the action against John T. King. The cost of the appeal is assessed to Appellee.

_____
HERSCHEL PICKENS FRANKS, J.