IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
December 8, 2020 Session

## KATRINA WALKER D/B/A RAINBOW KIDZ CHILD CARE CENTER v. TENNESSEE DEPARTMENT OF HUMAN SERVICES

**Appeal from the Chancery Court for Shelby County**
**No. CH-13-1450     JoeDae L. Jenkins, Chancellor**

_____

### No. W2019-01829-COA-R3-CV

_____

In this Opinion, we are tasked with reviewing two separate cases concerning the State's oversight of a child care center in Memphis. Somewhat uniquely, these cases were adjudicated under a single docket number in the Shelby County Chancery Court and were appealed to this Court in that posture. One of the cases, which concerns a petition for a writ of mandamus, was originally filed in the Davidson County Chancery Court and was subsequently transferred to the Shelby County Chancery Court. The second case involves judicial review under the Uniform Administrative Procedures Act. As to the mandamus case at issue, we conclude that venue lies only in Davidson County and, therefore, the trial court lacked subject matter jurisdiction to enter relief. Accordingly, that judgment is vacated, and we direct that the case be transferred back to the Davidson County Chancery Court. As to the case for judicial review, we conclude that the decision of the hearing officer was supported by substantial and material evidence and therefore reverse the trial court and remand for the entry of an order reinstating the hearing officer's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court in the Writ of Mandamus case is Vacated and Remanded and Judgment of the Chancery Court in the Uniform Administrative Procedures Act case is Reversed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Herbert H. Slattery, III, Attorney General and Reporter; Matthew Cloutier, Assistant Attorney General, for the appellant, Tennessee Department of Human Services.

Mimi Phillips, Memphis, Tennessee, for the appellee, Katrina Walker.

# OPINION

## BACKGROUND AND PROCEDURAL HISTORY

The Appellee, Katrina Walker,[1] operates the Rainbow Kidz Child Care Center ("Rainbow Kidz") in Memphis. The Appellant, the Tennessee Department of Human Services ("the Department"), is statutorily tasked with licensing, approving, and supervising child care agencies[2] such as Rainbow Kidz. *See* Tenn. Code Ann. § 71-1-105. The Department's oversight of Rainbow Kidz pursuant to this statutory duty has resulted in the controversies currently before us.

By way of general background, Rainbow Kidz, like other Tennessee child care agencies, is subject to an annual evaluation for which the Department issues a report card. *See* Tenn. Code Ann. § 71-3-502(j)(2)(A). This annual report card reflects key indicators of performance such as health and safety, staffing ratios, and the adequacy of facilities. *Id.* In addition to this mandatory annual evaluation, child care agencies may voluntarily participate in a rated licensing system known as the "Star-Quality Program." Qualified agencies that participate in this program receive a child care quality rating. Tenn. Code Ann. § 71-3-502(j)(3)(C). For those agencies that also participate in what is known as the "Child Care Certificate Program" and receive subsidy payments from the Department, this quality rating is especially significant. Indeed, in pertinent part, the Tennessee Code provides that:

> any qualified child care agency that agrees to voluntarily participate in the rated licensing system . . . and that accepts the department's child care assistance subsidy payments, may receive higher subsidy payments, as determined by the department, based upon the child care quality rating and subject to available funding in the department's budget.

Tenn. Code Ann. § 71-3-502(j)(3)(D). To illustrate, the Tennessee regulation pertaining to the Star-Quality Program provides[3] that:

---

[1] Although we refer to the Appellee by this surname, as is consistent with the caption of pleadings and convention of the parties in both of the legal challenges discussed herein, we observe that her full name appears to be Katrina Walker-Skeete.

[2] A "child care agency" includes facilities that operate as a "child care center." Tenn. Code Ann. § 71-3-501(4). A "child care center" means, subject to certain qualifications, "any place or facility operated by any person or entity that provides child care for three (3) or more hours per day for at least thirteen (13) children who are not related to the primary caregiver." Tenn. Code Ann. § 71-3-501(5).

[3] As discussed herein, the disputes before this Court concern assessments of Rainbow Kidz for the 2011 and 2012 years. We observe that the regulations relevant to child care agency report cards and rated licensing were amended in 2018. Unless otherwise specifically noted, our references to such regulations throughout this Opinion are to the version of those regulations existing before the 2018 amendments, namely the version with an initial effective date of January 4, 2009.

1. Agencies attaining a rating of "One Star" shall receive the base rate plus five percent (5%) of the base rate as a bonus payment.

2. Agencies attaining a rating of "Two Stars" shall receive the base rate plus fifteen percent (15%) of the base rate as a bonus payment.

3. Agencies attaining a rating of "Three Stars" shall receive the base rate plus twenty percent (20%) of the base rate as a bonus payment.

Tenn. Comp. R. & Regs. 1240-04-07-.07.

At issue here are two legal challenges stemming from Rainbow Kidz' participation in the Star-Quality Program. One of these legal challenges concerns the 2011 assessment; the other relates to the 2012 assessment. Although both of these legal challenges proceeded to final adjudication in the trial court under a single docket number, it is clear that our present task involves a review of two *separate* cases, one administrative in character and the other involving relief granted by the trial court pursuant to a writ of mandamus. Necessarily, the nature of the respective proceedings entails two different standards of review, and we tread carefully herein in acknowledgment of the fact that our review does not relate to the adjudication of a single civil case. Very simply, two distinct and separate appeals are presently involved.

*Commencement of the Mandamus Litigation*

The mandamus case relates to the Department's assessment of Rainbow Kidz for 2011. Ms. Walker's[4] mandamus petition, which was filed in the Davidson County Chancery Court on July 13, 2012, took issue with the Department's alleged interference with her right to appeal the 2011 assessment. This was of concern to Ms. Walker because, whereas Rainbow Kidz had previously received payments from the Department based on a two-star rating, she learned that the Department gave Rainbow Kidz a zero-star rating for 2011. Contending that her right to appeal had never been triggered based on the Department's alleged failure to mail the assessment report for Rainbow Kidz, Ms. Walker claimed that the Department should be compelled to void the 2011 assessment pursuant to a writ of mandamus and reimburse Rainbow Kidz for the payments made based on the zero-star rating. As discussed below, the mandamus case was later transferred to the Shelby County Chancery Court.

*Origin of the Administrative Case*

---

[4] In the caption to the petition, Ms. Walker's name was styled as "Katrina Walker, d/b/a Rainbow Kidz Child Care Center."

The second case at issue relates to the assessment for the 2012 licensing year.[5] The pertinent facts relevant to this dispute are traceable to August 2011, when Evangelina Clear, a field supervisor with the Department, sent a letter to Rainbow Kidz' then-director, Candi Wooten, providing notification that Rainbow Kidz' license was due for renewal on November 30, 2011. In the letter, Ms. Clear informed Ms. Wooten that the renewal process included an assessment, one that should be scheduled such that assessors would observe a "typical day." In emphasizing this point, the letter explained, in bold, that a typical day was "**the way your program operates on most any other day of the year**." Ms. Clear informed Ms. Wooten that a representative from the assessment program would call to schedule a date for the upcoming assessment, and an assessment was eventually scheduled for December 1, 2011.

At the December 1 assessment, different officials with the Department were responsible for assessing different classrooms. For her part, Ms. Clear was responsible for assessing the infant classroom. At that time, Ms. Wooten was identified as the lead teacher for the infant classroom, but according to Ms. Clear, Ms. Wooten left the room several times throughout the assessment, which was "unusual for a lead teacher." Despite her designation as the lead teacher on the date of the assessment, Ms. Wooten had, according to certain documentation in possession of the Department, never previously been listed as a teacher in any of the Rainbow Kidz classrooms in eighteen prior visits from the Department during the previous year.

One of the other assessors, who was responsible for assessing the preschool classroom, also encountered a "discrepancy" during the assessment. Specifically, it was determined that the time the assigned lead teacher arrived at Rainbow Kidz was not part of her normal working hours. Accordingly, it was decided that the assessment needed to be rescheduled because the day was not considered a typical one. The school-age classroom assessment, which had been scheduled for the afternoon of December 1, also had to similarly be rescheduled because the lead teacher in the school-age classroom had to leave work early. While the preschool and school-age assessments were initially rescheduled for December 22, they were later rescheduled for January 5, 2012.

When the rescheduled assessments occurred on January 5, the preschool assessment occurred first and the school-age assessment occurred second. As before, different Department officials were responsible for assessing the different classrooms. Ms. Wooten was identified as a teacher in both classrooms and was the lead teacher for the school-age classroom.

The school-age classroom assessment was handled by Shunda Milan. When she

---

[5] As a technical matter, the record indicates that licensing years formally span parts of two calendar years, but we employ the references utilized by the parties to avoid any confusion on this point and to clearly distinguish between the different assessments at issue.

arrived that afternoon to complete the assessment, she was informed that the room the school-age children used recently had a pipe burst over the holiday break and there was water damage on the floor. The assessment thereafter took place in a different classroom.

Following completion of the assessment, Ms. Milan talked with the assessor who conducted the preschool assessment, who stated that, earlier on the date of the assessment, she had done her assessment in the very room with the claimed burst pipe. Eventually, the Department determined that manipulation had occurred in connection with the overall annual evaluation process. In a letter detailing the bases for this conclusion, the Department noted as follows:

- The ECERS-R assessment was conducted on December 1, 2011, with Ms. Raybourn as the teacher in charge. However, DHS Assessment staff learned during the teacher interview that Ms. Raybourn's regular work hours were from 9:00 a.m. to 6:00 p.m. and that she was told to come in at 7:00 a.m. that morning for the assessment. Because Ms. Raybourn's working hours were changed for the day of the assessment, the day was not typical and assessment was rescheduled for December 22, 2011.
- The SACERS assessment could not take place the afternoon of December 1, 2011, because Ms. Raybourn was also identified as the teacher in charge in the school-age classroom (in addition, she had to leave work early that day). One person cannot be the teacher in charge in two classrooms simultaneously.
- Ms. Wooten was the teacher in charge in the infant/toddler classroom on December 1, 2011, and the assistant teacher in the preschool classroom and the teacher in charge in the school-aged classroom on January 5, 2012. While it would not be unusual for the director to be the teacher in charge in one classroom, if the three assessments had occurred on the same day as planned it would not have been physically possible for Ms. Wooten to work in all three classrooms in the capacities listed above. If the teacher in charge that is listed in the INFANT room is the typical lead that assessment is considered valid. However, the assessments for the SACERS and ECERS-R would not be considered valid due to the scheduling concerns that arise when the same teacher is working as a teacher in charge in two classrooms and as the assistant in the third classroom.
- DHS Licensing records show that Ms. Wooten was not a teacher in charge in any of the classrooms during DHS Licensing visits to the agency. Ms. Wooten went into classrooms only as a relief person for the other teachers.

- On January 6, 2012, it was discovered that the water damaged classroom shown to Ms. Milan as the school-aged classroom on the 5th was actually the preschool classroom observed . . . that same morning.

As a result of its finding of manipulation, the Department had several options. Indeed, per regulation, if a child care agency has unreasonably prevented an assessment or has attempted to manipulate the outcome, the Department may:

1. If the assessment must be rescheduled, the rescheduled assessment may be unannounced;

2. The Department of Human Services may automatically assign the agency a Program Assessment score of zero (0); or

3. A legal referral may be made for imposing a civil penalty of $50 for each day of the continuing violation and may subject the violator to other legal enforcement actions as set forth in Chapter 1240-04-05, which may include, but are not limited to, probation, denial, or revocation of the license.

Tenn. Comp. R. & Regs. 1240-04-07-.04. The Department, rather than automatically assign a score of zero, opted to proceed with a reassessment. In its letter to Rainbow Kidz, the Department specifically noted that "the decision has been made to conduct an unannounced reassessment."

Assessors from the Department thereafter returned to Rainbow Kidz on March 20, 2012 to conduct the reassessment, but they were not permitted to carry it out. Rainbow Kidz refused to allow the reassessment upon advice of counsel. The reassessment thus never occurred.

Following Rainbow Kidz' refusal to permit a reassessment, the Department sent a letter indicating its decision to issue an assessment score of zero. The letter chronicled the Department's decision to conduct an unannounced reassessment in light of its finding of attempted manipulation and noted that Rainbow Kidz' refusal to allow the March 20, 2012 reassessment was considered "unreasonable prevention and interference of the assessment process." An administrative appeal was thereafter pursued by Ms. Walker, beginning with two levels of intradepartmental review[6] and culminating in a contested case hearing under the Uniform Administrative Procedures Act ("UAPA").[7]

---

[6] "The appeal process shall begin with the request for an Intradepartmental Review." Tenn. Comp. R. & Regs. 1240-04-07-.08.

[7] *See* Tenn. Code Ann. § 4-5-301 *et seq.*

In adjudicating Ms. Walker's appeal, the designated hearing officer determined that Rainbow Kidz' zero score should be upheld. The hearing officer concluded that Rainbow Kidz had attempted to manipulate the outcome of its assessment and unreasonably prevented the reassessment from occurring. Ms. Walker subsequently filed a petition for judicial review of the hearing officer's decision in the Shelby County Chancery Court. Therein, Ms. Walker alleged that the decision was "unsupported by evidence that is both substantial and material in the light of the entire record of the case, and was characterized by a clearly unwarranted and abusive exercise of discretion." Among other things, Ms. Walker contended that the evidence to support the claim of manipulation was "flimsy" and, further, that she did not act unreasonably to prevent a reassessment. After the filing of the UAPA case in Shelby County, the Davidson County Chancery Court transferred the mandamus case to Shelby County without any objection from either the Department or Ms. Walker. An "Agreed Order of Transfer" was entered by the Davidson County Chancery Court, followed by the entry of an order in the Shelby County Chancery Court accepting the transfer.

*The Trial Court's Adjudication of the Respective Cases*

The Shelby County Chancery Court eventually[8] granted relief to Ms. Walker/Rainbow Kidz in both cases in orders entered on May 13, 2019. In its order granting mandamus relief, the court held that the 2011 assessment was void because the Department had denied Ms. Walker's right to appeal the zero-star score. Interestingly, whereas the court concluded that the Department had a clear duty to hear an appeal, it did not actually order such relief under a writ of mandamus. The court concluded that no review of the 2011 assessment was possible and, as a result, held that mandamus should be granted requiring the Department "to reinstate the Two-Star rating for the 2011 year."

In the separately-entered "Order on Petition for Judicial Review," the Shelby County Chancery Court determined that the hearing officer's order should be reversed. The court concluded—despite having made separate findings indicating that a zero score had been given as a result of incidents of manipulation—that the exclusive basis for Rainbow Kidz' zero-star rating was that Rainbow Kidz had allegedly committed unreasonable prevention and interference with the assessment process. The court further concluded that the hearing officer had failed to consider certain proof tendered by Ms. Walker on this issue and that such evidence was sufficient to establish that the refusal to allow an unannounced reassessment was reasonable. Although the court opined that its determination about the reasonableness of Rainbow Kidz' refusal to allow a reassessment was alone enough to compel a reversal of the hearing officer's decision, it further held that

---

[8] Although it may not explain all of the delay, Part III of the Shelby County Chancery Court (where this matter was pending) has experienced some turnover in Chancellors in recent years. Ms. Walker's brief alludes to this point, noting "the elevation of one Chancellor to the appellate bench; the death of his successor; [and] the election defeat of the next Chancellor appointed to fill the unexpired term."

the hearing officer's conclusion about manipulation was not supported by substantial and material evidence in the record.

On September 12, 2019, the Shelby County Chancery Court entered additional orders concerning the awarding of attorney's fees to Ms. Walker's counsel. In one order, the court awarded over $105,000.00 in fees and expenses pursuant to Tennessee Code Annotated section 4-5-325. In the second order, which was styled "Order Modifying this Court's May 13, 2019, Order on Petition for Writ of Mandamus," the court held as follows: "[A]ll of [Ms. Walker's] expenses and attorney fees having been incurred by her in pursuit of administrative relief, it is the intent of this Court that none of the fees and expenses shall be deemed attributable [to] the Petition for Writ of Mandamus." The Department thereafter sought appellate review in this Court of the decisions in both cases.

## ISSUES PRESENTED

The Department's brief raises the following three issues for review, restated verbatim as follows:

I.    Whether the chancery court erred by issuing a writ of mandamus compelling the Tennessee Department of Human Services to change its 2011 assessment score for Rainbow Kidz Child Care Center.

II.   Whether the chancery court erred by reversing the Department's administrative decision upholding its 2012 assessment score for Rainbow Kidz.

III.  Whether the chancery court erred by awarding attorney's fees to Rainbow Kidz under Tenn. Code Ann. § 4-5-325.

Ms. Walker does not raise any independent issues for review and argues in defense of the trial court's respective judgments.

## DISCUSSION

Because our review herein actually involves separate appeals of separate cases as previously discussed, we invariably must address the mandamus and UAPA cases separately in our discussion. We turn first to the Department's appeal of the relief granted by the trial court pursuant to a writ of mandamus.

*Mandamus Case*

The Department maintains in its appellate brief that "the court's issuance of a writ of mandamus regarding Rainbow Kidz' 2011 assessment exceeded judicially recognized limits on the scope of the writ" and compelled the performance of a non-ministerial act.

Ultimately, we do not pass on the validity of these arguments or specifically entertain the propriety of the merits rulings made by the trial court on the matter. As explained below, we are of the opinion that the Shelby County Chancery Court did not have subject matter jurisdiction to adjudicate Ms. Walker's petition for a writ of mandamus, and its order granting mandamus relief should accordingly be vacated on that basis. Although no party has raised this issue on appeal, we are required to do so. *See* Tenn. R. App. P. 13(b) ("The appellate court shall . . . consider whether the trial and appellate court have jurisdiction over the subject matter, whether or not presented for review."); *Hirt v. Metro. Bd. of Zoning Appeals of Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 542 S.W.3d 524, 527 (Tenn. Ct. App. 2016) (noting that this Court is required to consider the subject matter jurisdiction of both this Court and that of the trial court regardless of whether such is presented as an issue).

Under Tennessee Code Annotated section 29-25-101, "[c]ircuit judges and chancellors have power to issue writs of mandamus, upon petition or bill, supported by affidavit." Tenn. Code Ann. § 29-25-101. Pursuant to Tennessee Code Annotated section 29-25-103,

> [t]he writ is returnable to the court of the county in which the land lies, in all cases where land is the subject of controversy, and in all other cases to the court of the county where the defendant resides, or, **if against a public officer or corporation, in <u>the county</u> in which the office is kept or corporation does business.**

Tenn. Code Ann. § 29-25-103 (emphases added).

Of note, when referencing the latter statutory provision in her petition for a writ of mandamus, Ms. Walker noted as follows:

> 5. This Court has jurisdiction of this mandamus action pursuant to T.C.A.§ 29-25-101. Pursuant to T.C.A. §4-4-104 each department of State government must maintain its central office "at the capital." Pursuant to T.C.A. § 29-25-103 a Petition for Writ of Mandamus must be brought in the county where a public office is located.
>
> Accordingly, Petitioner submits that venue of this action is exclusively in Davidson County.

We agree with Ms. Walker's assessment that the mandamus case is required to be brought in Davidson County under the facts of this case. The statute clearly indicates that the writ is returnable to only one county, and here, as Ms. Walker previously noted, that venue is exclusively in Davidson County. Indeed, as the Tennessee Supreme Court has explained,

"[Tennessee Code Annotated section 29-25-103][9] makes a writ of mandamus against a public official returnable in the county where the office is kept." *Chamberlain v. State ex rel. Brown*, 387 S.W.2d 816, 817 (Tenn. 1965). As Mr. Walker aptly acknowledged in her petition, the office of the Department is statutorily designated to be "at the capit[o]l," which of course is in Davidson County. *See* Tenn. Code Ann. § 4-4-104 (providing that "[e]ach department shall maintain a central office at the capitol, which shall be the official residence of each commissioner, or head of department").

Although the record indicates that the mandamus case was transferred from the Davidson County Chancery Court to the Shelby County Chancery Court without any objection from either side, this did not give the Shelby County Chancery Court jurisdiction to hear the case. The statute reveals that venue is localized, and as such, it implicates subject matter jurisdiction concerns. As this Court previously explained:

> When venue is possible in only one county . . . the localization of venue creates subject matter jurisdiction restrictions. This returns us to the Tennessee Supreme Court's pronouncement that "[t]he Courts of our State have no jurisdiction of local actions brought in the wrong county *and consent cannot give jurisdiction.*" *Curtis*, 364 S.W.2d at 936.

*Pack v. Ross*, 288 S.W.3d 870, 873 (Tenn. Ct. App. 2008) (emphasis added).

Simply put, the writ was returnable in Davidson County exclusively, and Ms. Walker was correct to originally acknowledge that and file her case there. The absence of any objection to the subsequent transfer of the case is of no moment given the subject matter jurisdiction restrictions created by the localization of venue.

As a consequence of the foregoing discussion, we conclude that the Shelby County Chancery Court had no authority to enter orders in the mandamus case, and those orders are hereby vacated. The case initially was properly filed in the Davidson County Chancery Court, and it is appropriate that it be transferred back to that court and reinstated under its original docket number. *See In re Estate of Henry C. Ellis III*, No. W2019-02121-COA-R3-CV, 2020 WL 7334392, at *8 (Tenn. Ct. App. Dec. 14, 2020) (citing Tenn. Code Ann. § 16-1-116) ("Although this case was not originally filed in circuit court, it was initially filed in the proper court[.] . . . Transfer back to probate court is therefore appropriate in this case."). We now shift our attention below to the UAPA case.

*UAPA Case*

At the outset of our discussion here, we observe that the jurisdictional defect

---

[9] The specific text of the opinion refers to "T.C.A. § 23-2003," which is the former cite in the Code for the statute now codified at Tennessee Code Annotated section 29-25-103.

applicable to the mandamus case has no bearing on our ability to review the Shelby County Chancery Court's order adjudicating Ms. Walker's UAPA case. By statute,

> [a] person who is aggrieved by a final decision of the department of human services . . . in a contested case may file a petition for review in the chancery court located either in the county of the official residence of the appropriate commissioner *or in the county in which any one (1) or more of the petitioners reside.*

Tenn. Code Ann. § 4-5-322(b)(1)(B)(i) (emphases added). We thus turn to the merits of the matter.

The parameters set for review under the UAPA are well-settled. As this Court has explained:

> Tenn. Code Ann. § 4–5–322(h) addresses the narrow scope of judicial review of an administrative agency decision as follows:
>
>> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>>
>> (1) In violation of constitutional or statutory provisions;
>> (2) In excess of the statutory authority of the agency;
>> (3) Made upon unlawful procedure;
>> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>> (5) Unsupported by evidence which is both substantial and material in the light of the entire record.
>>
>> In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.
>
> The term "substantial and material evidence" has been defined as "'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.'" *Papachristou v. Univ. of Tennessee,* 29 S.W.3d 487, 490 (Tenn.Ct.App.2000) (quoting *Clay Co. Manor, Inc. v. State,* 849 S.W.2d 755, 759 (Tenn.1993)). This Court has also described it as requiring "'something less than a preponderance of the evidence ... but more than a

- 11 -

scintilla or glimmer.'" *Gluck v. Civil Serv. Comm'n,* 15 S.W.3d 486, 490 (Tenn.Ct.App.1999) (quoting *Wayne Co. v. State Solid Waste Disposal Control Bd.,* 756 S.W.2d 274, 280 (Tenn.Ct.App.1988)). Judicial review of an administrative agency's decision under the "substantial and material evidence" standard, however, subjects the agency's decision to close scrutiny. *Sanifill of Tennessee, Inc. v. State Solid Waste Disposal Control Bd.,* 907 S.W.2d 807, 810 (Tenn.1995).

When reviewing a trial court's review of an administrative agency's decision, this Court essentially is to determine "whether or not the trial court properly applied the ... standard of review" found at Tenn. Code Ann. § 4–5–322(h). *Papachristou v. Univ. of Tennessee,* 29 S.W.3d at 490.

*Jones v. Bureau of TennCare*, 94 S.W.3d 495, 500–01 (Tenn. Ct. App. 2002).

Here, the hearing officer concluded that Rainbow Kidz attempted to manipulate the outcome of the assessment and unreasonably prevented a reassessment. In her brief on appeal, Ms. Walker suggests the real issue was her "reasonableness" in preventing a reassessment. Indeed, she expressly states that "'manipulation' was not the issue." She further argues that the hearing officer failed to consider her proffered evidence on the reasonableness question.

In support of her position that "manipulation" was not an issue for the hearing officer to consider, Ms. Walker contends that the Department's letter announcing a zero-star rating for Rainbow Kidz designated "unreasonable prevention and interference" with the reassessment as the basis for the score. She further argues that this was the scope of the Department's intradepartmental review.

As an initial matter, it does not appear to us that the intradepartmental review was divorced from consideration of the manipulation issue. For instance, we observe that in briefing submitted with the trial court, Ms. Walker stated that the first level of intradepartmental review involved a discussion of the Department's allegations concerning manipulation and, among other things, related to a review of its decision to conduct an unannounced assessment. Moreover, at the contested case hearing, one of the Department officials involved in the level two review testified that the documentation she reviewed had supported upholding the manipulation finding. Ms. Walker nonetheless maintains, however, that the basis for Rainbow Kidz' zero-star rating was tied exclusively to the "reasonableness" issue, not manipulation.

Although the trial court appeared to partially latch onto this understanding in its order adjudicating the UAPA case, it should be noted that the trial court's adherence to this narrow viewpoint of the basis for Rainbow Kidz' rating was not consistent. In its "Findings of Fact," for instance, the trial court noted that the letter to Rainbow Kidz informed "that a

program assessment score of zero (0) . . . was being given as a result of the two (2) manipulation incidents." This perhaps should be no surprise, because despite her own present argument on the matter, we note that Ms. Walker's position itself has been inconsistent. Notably, at the opening of the administrative contested case hearing, Ms. Walker's counsel stated that the hearing officer's review was going to involve "an appeal of the charge of manipulation which resulted in [the] zero star rating." Moreover, in her own testimony, Ms. Walker agreed that the reason she had zero stars was because she supposedly manipulated the assessment.[10]

As explained below, we conclude that there is substantial and material evidence to support the hearing officer's determinations on both cited bases, attempted manipulation and unreasonable prevention of an assessment. Therefore, assuming *arguendo* that the hearing officer's review should have been limited to the latter issue (even in the face of Ms. Walker's counsel's express invitation into the other issue at the opening of the contested case hearing and Ms. Walker's own testimony about the basis for her score), the trial court should not have reversed the hearing officer's decision to uphold the zero-star rating for Rainbow Kidz.

We turn first to the reasonableness issue, as that has been at the forefront of Ms. Walker's concerns in both this Court and the trial court. The crux of Ms. Walker's position is that she was reasonable in refusing a reassessment in March 2012 based on the history of the Department's alleged unfair treatment of her, principally in relation to the prior assessment year at issue in the mandamus case. She claims that the hearing officer wrongfully denied her ability to present proof on that matter, and in persuading the trial court on this point, she was actually allowed to present additional proof in the judicial review hearing in an attempt to demonstrate the Department's alleged past unfairness. The trial court itself affirmatively determined that the record contained testimony, exhibits, and offers of proof sufficient to show the reasonableness of Ms. Walker's refusal.

Initially, it should be apparent that the trial court did not simply review the hearing officer's findings; it made its own. It did so as a consequence of its determination that the hearing officer had abused her discretion and acted arbitrarily and capriciously in not considering the evidence tendered by Ms. Walker on the reasonableness issue. As to this point, we fundamentally disagree with the trial court's conclusion that Ms. Walker was improperly prevented from putting on proof on the reasonableness issue. No doubt, the hearing officer limited Ms. Walker's pursuit of this line of inquiry, but it is clear that she did so on account of the fact that the specific proof Ms. Walker wanted to submit was deemed irrelevant.

---

[10] [Ms. Walker's counsel]: The reason you have zero stars is because you supposedly manipulated the assessment.
[Ms. Walker]: Right.

- 13 -

During the questioning of Ms. Walker at the contested case hearing, her counsel openly stated that the refusal to allow a reassessment in March 2012 "doesn't look reasonable on its face." Nevertheless, counsel argued that there was a reason for the refusal. As alluded to earlier, she expressed a desire to explore the history between the Department and Ms. Walker as sufficient justification for such. It was clear that the proof supposedly relevant to the issue would involve a consideration of facts pertaining to the *prior* assessment year, and counsel for the Department objected on this basis, stating as follows:

> [T]he previous year's assessment has no relevance to this year. And, it's not just the March 20 assessment that she refused, we detailed how we went out on December 1, we tried to go out on December 22. We went out again January 5, we detailed why we felt all of that was manipulation. That was put in the March 2 letter. And, where we announced we would come again, an unannounced assessment. So it has nothing to do with the previous year, or anything that happened prior to November 2011, when we were starting to prepare for the December 1, 2011 assessment. It has no bearing. And, [Ms. Walker's] interactions with whoever in Nashville, about whatever is going on, has no bearing here. We are only talking about this assessment[.]

The hearing officer expressed skepticism about the relevance of what Ms. Walker wanted to develop factually, but upon her counsel's insistence that she "can make it relevant," the hearing officer gave her some leeway to see if she could establish how, giving her a limited opportunity to do so. This attempt to provide fairness notwithstanding, the hearing officer was firm in her ultimate understanding of what she perceived to be at stake. "If in five minutes you can briefly give me evidence to support this, you're stating that they're saying it's unreasonable, in this, but keep in mind now, when I review. My review really is just for that licensing year[.]"

Counsel for Ms. Walker then went onto elicit testimony from her client regarding the prior assessment year, primarily in relation to grievances Ms. Walker had pertaining to the alleged denial of her right to appeal the prior year's assessment. In essence, as conveyed by the argument of Ms. Walker's counsel, the alleged unfairness from the prior year indicated that the Department was one "that[] takes advantage of the people it regulates" and that Rainbow Kidz should not have to "play with these people."

With respect to the argument that the reasonableness issue was not even considered and should have been, this is belied in several respects, including the hearing officer's willingness to consider if Ms. Walker had any *relevant* proof on the matter, as well as the hearing officer's later determination on the question. To be fair, the hearing officer's statements create some confusion on this point in places. For instance, during a portion of the administrative hearing, the hearing officer expressed an apparent intent to just review

- 14 -

"whether or not there was a manipulation."[11]  Yet, the record reflects that the hearing officer did not prevent proof on the reasonableness question; she simply rejected the relevance of what was tendered.  Indeed, after the hearing officer's indication that she would review "whether or not there was a manipulation," the following colloquy ensued between her and Ms. Walker's counsel:

> [Counsel for Ms. Walker]: Well, there wasn't any manipulation, I'm not even worried about that.  But the basis of the opinion . . . is that you were unreasonable in keeping them out on March 20.  And, I think there, you have to go to, why did you do that?  And, why you did that is all this stuff going on.

> [Hearing officer]: Well it does raise the question, why.  **I agree with that part.  And, Ms. Walker did that, and your testimony is right here on my sheet of paper**.

(emphasis added).  In her ultimate decision, the hearing officer simply indicated that she regarded such testimony to have no bearing on the 2012 assessment,[12] and following the above-quoted colloquy, exhibits unrelated to that assessment year were subsequently marked for identification purposes as offers of proof.

We find nothing unreasonable or arbitrary about the hearing officer's decision that proof of alleged unfairness in connection with the prior year's assessment had no relevance to what took place in the assessment year at issue before her.  In essence, Ms. Walker's position is that the Department has treated her unfairly in the past, and therefore, she had the right to refuse the reassessment.[13]  The problem with this, of course, is that the Department has a statutory duty to annually evaluate child care agencies.  If alleged past unfairness from the Department constituted a valid basis to refuse oversight from the Department, the Department's statutory obligations could not be fulfilled.  This is not to say that Ms. Walker would be without a remedy if arbitrary or capricious actions were to be taken against her.  The UAPA itself directly protects against such behavior.  *See* Tenn. Code Ann. § 4-5-322.  But we fail to see how it is a reasonable position to, in effect, prospectively claim that one is not subject to continued oversight out of a fear that alleged

---

[11] Even assuming the officer had singularly restricted her focus to this subject, we would note again, among other things, Ms. Walker's counsel's own framing of the pertinent issue at the opening of the administrative hearing.

[12] She stated therein: "The Department objected to the Appellant's testimony regarding the previous year's assessment on the basis the testimony was irrelevant.  The Appellant argued relevancy and was given five (5) minutes to establish relevancy.  The objection was sustained."

[13] In a hearing before the trial court, counsel for Ms. Walker referred to it as a "Mickey Mouse reassessment."

unfairness from the past may materialize again. The hearing officer did not, therefore, act unreasonably in limiting Ms. Walker's desire to develop this point.

The proof before the hearing officer was clear and uncontested that the Department officials were not permitted to conduct the March 2012 reassessment when they endeavored to do so. Ms. Walker's own counsel opined that this refusal did not look reasonable on its face, but in an attempt to create some question on the issue, simply offered evidence that, for the reasons already discussed, was rejected by the hearing officer. The hearing officer did not err in rejecting Ms. Walker's attempt to make the grievances at the center of her mandamus case for one assessment year front and center in the administrative appeal process pertaining to another assessment year. There is substantial and material evidence to support the hearing officer's determination that Rainbow Kidz unreasonably prevented an assessment.

We next turn to the manipulation issue. We have previously indicated why manipulation was a valid issue for the hearing officer to consider; as noted, among other things, Ms. Walker's own counsel stated that the administrative hearing would involve "an appeal of the charge of manipulation which resulted in [the] zero star rating." We additionally note that one of the hearing officer's specific factual findings, which the trial court noted was "supported in the Record," expressed the understanding that the Department had marked Rainbow Kidz' assessment invalid as a result of manipulation.[14] But of course the question begs: was the Department's determination legitimate? Or, in terms of the precise question now before us, when the issue was presented before the hearing officer, did substantial and material evidence support her later determination that the assessment for Rainbow Kidz was invalid based on "manipulation"? We are of the opinion that it did. As discussed below, we conclude that the evidence before the hearing officer furnished a reasonably sound basis for determining that there had been an attempt at manipulating the assessment process.

Although the Department's case for manipulation was pursued on several fronts, the hearing officer honed in on and accredited two particular bases. First, the hearing officer focused on the evidence related to teacher Jennie Raybourn's working hours, namely the allegation that she had been asked to arrive earlier than her normal shift for purpose of the assessment. Second, the hearing officer focused on the evidence related to Ms. Wooten's involvement in all three classrooms assessed notwithstanding her lack of presence in the classrooms in the year leading up to the assessment.

The issue involving Ms. Raybourn was the original impetus for the Department's decision to come back to Rainbow Kidz in January 2012, and there was certainly substantial and material evidence contributing to the Department's concern that there had

_____

[14] The specific finding was: "The Department determined manipulation existed and the assessment . . . was marked invalid."

been an attempt at manipulation as early as the initial assessment date in December 2011. Indeed, among other proof, there was evidence that Ms. Raybourn had arrived two hours early on the date of the assessment because she was instructed to do so. Although Ms. Walker attempted to establish that the time at which Ms. Raybourn had arrived was not atypical, certain evidence revealed that Ms. Raybourn could not provide information about what the children ordinarily do between 7:00 AM and 8:00 AM when she had been asked to do so by the Department. As for Ms. Wooten, the then-Director of Rainbow Kidz, she ended up having a presence as a teacher in every classroom that was ultimately assessed. This raised questions for the Department about whether this was also an attempt to manipulate the assessment process. Indeed, Ms. Wooten's presence as a teacher at the assessment was in sharp juxtaposition to the understanding the Department had gleaned of her role from their visits to Rainbow Kidz in the year prior. Evidence was submitted showing that Ms. Wooten had acted as an "occasional floater" and center director, and at the hearing, an activity report was entered that detailed program evaluators' visits to Rainbow Kidz beginning in February 2011. Ms. Walker's counsel stipulated that the activity report revealed that Ms. Wooten was not a lead or assistant teacher in any of the classrooms for the eighteen visits which were chronicled by the Department.[15]

Moreover, Ms. Walker's daughter testified that Ms. Wooten was not a teacher in the infant classroom on a regular basis, and when the Department's counsel began to pursue this matter further on cross-examination, Ms. Walker's daughter stated that she was "not going to answer" because she did not know. Certain testimony indicated that it was not atypical for a director such as Ms. Wooten to fill in as a lead teacher, but according to Sally Williams, a cook and floater at Rainbow Kidz, Ms. Wooten was "really a director." She testified that if Ms. Wooten did fill in as a teacher, it would not be for the whole day:

[Ms. Walker's counsel]: Okay. And, can you tell us whether or not, if Ms. Wooten was the teacher or not, would she be the teacher for the whole day?

Williams: No.

[Ms. Walker's counsel]: If she had to be?

Williams: No.

[Ms. Walker's counsel]: Or, for a few minutes?

---

[15] Concerning a second compilation of documents, which was comprised of "evaluation check sheets" by program evaluators, counsel for Ms. Walker also stipulated that Ms. Wooten was not listed as a lead teacher on any of those documents. Counsel for the Department agreed but did note that Ms. Wooten had been identified as a second teacher on a single date, March 25, 2011.

Williams:  Yes.

[Department's counsel]:  She just said no.

[Ms. Walker's counsel]:  Oh, no what.  I'm sorry.  You said she would not be the teacher for the whole day?

Williams:  No, they, someone else would do the teaching.

Further entrenching the Department's suspicion about Ms. Wooten's presence in all three assessed classrooms (and as the lead in two) was the application Rainbow Kidz had submitted in order to renew its license.  That application, completed just weeks before the December 1, 2011 assessment date and which listed staffing patterns for Rainbow Kidz, did not reflect that Ms. Wooten was a teacher for any of the facility's classrooms.

Contrary to the conclusion of the trial court, we conclude that there was substantial and material evidence to support the hearing officer's determination that there was an attempt to manipulate the assessment.  Accordingly, the trial court's judgment is reversed, as is its order awarding Ms. Walker attorney's fees and expenses, and the case is hereby remanded for the entry of an order reinstating the decision of the hearing officer.

## CONCLUSION

As to the mandamus case, the orders of the Shelby County Chancery Court are vacated, and the case is remanded with instructions to transfer the record back to the Davidson County Chancery Court where the case shall be reinstated to its prior docket number.  As to the UAPA case, the trial court's judgment is reversed, as is its order on attorney's fees and expenses, and the case is remanded to the trial court with instructions to enter an order reinstating the decision of the hearing officer.

                                                      s/ Arnold B. Goldin
                                              ARNOLD B. GOLDIN, JUDGE